## IN THE COURT OF APPEALS OF IOWA

No. 17-0132
Filed July 18, 2018

**MAURICIO RAMIREZ FERNANDEZ,**
　　　　Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
　　　　Respondent-Appellee.
_____

　　　　Appeal from the Iowa District Court for Polk County, Michael D. Huppert,

Judge.


　　　　Mauricio Ramirez Fernandez appeals the denial of his application for

postconviction relief. **REVERSED AND REMANDED.**


　　　　Angela L. Campbell of Dickey & Campbell Law Firm, PLC, Des Moines, for

appellant.

　　　　Thomas J. Miller, Attorney General, and Benjamin M. Parrott, Assistant

Attorney General, for appellee State.



　　　　Heard by Vaitheswaran, P.J., and Potterfield and Tabor, JJ.

**TABOR, Judge.**

Deportation consequences and the duty of criminal defense attorneys again intersect in this case. Mauricio Ramirez Fernandez[1] appeals the denial of postconviction relief (PCR), contending his attorney was ineffective for failing to warn him about the immigration and criminal fallout from "turning himself in" to the Iowa Department of Transportation (DOT) for using a false Social Security number to register a vehicle. By doing so, Ramirez obtained a conviction for fourth-degree fraudulent practice. He also faults his attorney for continuing to represent him while listed as a prosecution witness and for advising him to plead guilty to a crime of moral turpitude, rendering him ineligible for cancellation of removal proceedings.

Following recent precedent from our supreme court, we conclude no constitutional right to counsel had attached when attorney Michael Said advised Ramirez to reveal incriminating facts to the DOT. But we do find Said operated under an actual conflict of interest in continuing to represent Ramirez throughout the criminal case while listed as a State's witness and not informing Ramirez of this fact. We further find Said breached a duty in failing to adequately inform Ramirez of the immigration consequences of his plea and Ramirez demonstrated prejudice by rationally insisting he would have stood trial if he knew the reduced charge carried the same prospect for removal as conviction on the original offense. We reverse his conviction and remand for Ramirez to proceed with non-conflicted, competent counsel.

---

[1] Throughout the record, the applicant-appellant is identified by the surname Ramirez, so we will do the same in this opinion.

Because we resolve the appeal on the conflict-of-interest and failure-to-advise issues, we need not address Ramirez's two remaining claims: (1) that counsel was ineffective for not moving to suppress privileged information and (2) that the district court abused its discretion in sustaining an objection to questions concerning Said's pattern of failing to properly advise clients of known immigration consequences of their criminal convictions.

## I.      Facts and Prior Proceedings

Ramirez is a Mexican citizen, who has been living in the United States since 1996.  He and his wife, also a Mexican national, have two children, one of whom is an American citizen.  In 2011, Ramirez was arrested while at work without proof of authorization to be in the United States.  Immigration authorities began removal proceedings against Ramirez, and he retained attorney Said to represent him in his immigration case.  Said filed an application for cancellation of removal for Ramirez.[2]

In the course of his representation in the immigration case, Said advised Ramirez to get a driver's license.  Ramirez confided in Said that he had used a false Social Security number to register a car.  On July 20, 2011, Said sent an email to a DOT investigator with whom he had previous dealings, saying,

> I have another client who used a false SS# to register his car and House trailer.  He now has a bona fide SS# and wants to get his DL and register his car and Trailer with the correct number.  I am seeing you tomorrow and could bring him in.

---

[2] Immigrants in removal proceedings may obtain a cancellation of removal, if eligible.  *See* 8 U.S.C. § 1229b(b)(1) (2011).  Immigrants are ineligible if they have been convicted of an aggravated misdemeanor (8 U.S.C. § 1227(a)(2)(A)(iii)) or any crime considered to be a "crime of moral turpitude."  8 U.S.C. § 1229b(b)(1)(C), 1182(a)(2).  While an application for cancellation of removal is pending, the applicant can obtain work authorization and a Social Security number.

> False SS# is [###-##-####].
> Let me know what you want to do.

According to his report narrative, the investigator searched DOT databases and discovered an application for vehicle registration dated October 27, 2008, under the false Social Security number Said provided. On the following day, July 21, Said and Ramirez met with the investigator. At the meeting, Ramirez provided a written statement labeled, "VOLUNTARY STATEMENT (NOT UNDER ARREST)": "I used a made up Social Security number to register a car in Polk County, Iowa on 10/27/08." The investigator issued Ramirez a "citation and complaint" charging him with fraudulent practice in the third degree, in violation of Iowa Code section 714.11(3) (2008). This is an aggravated misdemeanor under Iowa law.[3] Iowa Code § 714.11(3).

At the PCR trial, Ramirez testified he did not know Said had informed the DOT of his false Social Security number and falsely registered car until after he had been charged. He also testified Said never told him he would be charged with a crime if he went to the DOT. He further testified he was never told the offense would make him ineligible for cancellation of removal. He insisted if he had known, he would not have gone to the DOT. Ramirez recalled Said telling him if he agreed to everything he would be "alright." Ramirez had limited English-language skills, and Said had limited Spanish-language proficiency. No interpreter was present during the DOT meeting. Afterward, Said brought Ramirez to his law office and

---

[3] But under federal law, it is considered an aggravated felony; the immigration consequence would have included ineligibility for cancellation of removal. *See* U. of Iowa C. of L., Advanced Immigration Law & Policy Project, *Immigration Consequences for Iowa Criminal Statutes* 213-14 (2015), hereinafter *Immigration Consequences*.

asked his Spanish-speaking secretary to translate what had happened. Ramirez testified he did not understand he had been charged with a crime until the meeting in Said's office. At that point, Said took a $2500 retainer to represent Ramirez in the criminal proceedings.

Said testified Ramirez was aware Said was going to disclose the incriminating information to the DOT before the attorney did so, even though it was protected by attorney-client privilege. Said recalled telling Ramirez he would face a criminal charge. Said also explained he thought Ramirez should get a driver's license because the attorney did not anticipate Ramirez would refrain from driving, and eventually Ramirez might incur a more serious conviction that would severely impact his immigration status. The benefit of going to the DOT, according to Said, was Ramirez could obtain a driver's license and be charged with an aggravated misdemeanor only. Said noted other noncitizens in similar circumstances had been charged with the felonies of forgery and identity theft. Said did not advise Ramirez not to drive or suggest that was an option.

When the State filed the trial information charging Ramirez with fraudulent practice, it listed two witnesses: the DOT investigator and Said. Neither Said nor the State brought this potential conflict to the district court's attention; the court did not mention the witness list or inquire further. At the PCR trial, Ramirez testified he was not aware, and Said never told him, Said was listed as a witness. According to Ramirez, Said did not inform him that if he went to trial Said could be called to testify against him. Said never obtained a waiver of conflict from Ramirez. Said continued to represent Ramirez in both his immigration and criminal cases; Ramirez continued to pay Said for his representation.

On Said's advice, Ramirez pleaded guilty to a reduced charge of fraudulent practice in the fourth degree, in violation of Iowa Code section 714.12, classified as a serious misdemeanor.[4] The United States government then filed a motion to pretermit Ramirez's application for cancellation of removal, arguing the conviction was for a crime of moral turpitude, rendering Ramirez ineligible. The federal immigration court agreed with the government that the conviction was a crime of moral turpitude and granted the motion, subjecting Ramirez to removal proceedings.

When asked at the PCR trial whether he advised Ramirez about the immigration consequences of the plea, Said responded it was a standard procedure of his office to "explain that any criminal matter has an immigration consequence," including possible removal. He did not know whether he or another attorney in his office had explained the matter to Ramirez. He testified he

---

[4] No evidence in the record supports the element of fraudulent practice in the fourth degree that services involved "exceed[] two hundred dollars but do[] not exceed five hundred dollars." Iowa Code § 714.12. Fraudulent practice in the third degree applies where "it is not possible to determine an amount of money or value of property and services involved." Iowa Code § 714.11(1)(c). The DOT investigative report concluded charging third-degree fraudulent practice was appropriate "since a dollar amount is not determinable by the use Mr. Ramirez had with the car." The investigator also discovered Ramirez used the Social Security number for wages but gave only a verbal warning for that act. The trial information (and subsequent amendment) do not show the amount involved. The plea agreement states the defendant was pleading to "Fraudulent practices 4th <AS AMENDED> in violation of Iowa Code Section(s) 714.12." Ramirez provided the following factual basis: "I went and registered a car using a SS to which was not mine." Nothing in the plea record identified the dollar amount involved. Our supreme court has rejected the notion that counsel may have strategic reasons for permitting a client to plead guilty notwithstanding the lack of a factual basis. *State v. Hack*, 545 N.W.2d 262, 263 (Iowa 1996) ("Endorsing such strategies . . . would erode the integrity of all pleas and the public's confidence in our criminal justice system."). But because Ramirez has not challenged his counsel's performance related to the factual basis, we do not address that issue.

subjectively believed fraudulent practice was not a crime of moral turpitude. But on cross-examination, he stated he told Ramirez "some people" consider fraudulent practice a crime of moral turpitude. And in depositions, he admitted knowledge of two cases from the United States Court of Appeals for the Eighth Circuit concluding it is a crime of moral turpitude. Said was asked, "[A]t the time [Ramirez] took the plea, it was a settled matter for at least the 8th Circuit that it was a [crime of] moral turpitude; is that correct?" Said answered, "Yeah." When asked, "Did you advise—specifically advise [Ramirez] that he was pleading to a crime of moral turpitude?" Said answered, "No, I don't remember if I did specifically tell him that."

Although the district court found Said's performance was deficient in not sufficiently advising Ramirez on the immigration consequences of the plea, it found no prejudice because Ramirez had not shown he would have insisted on going to trial for the greater offense. Thus, the district court denied Ramirez's application for PCR. Ramirez appeals.

## II.    Analysis of Sixth Amendment Claims

We review PCR proceedings for correction of legal error unless they raise constitutional issues, in which case our review is de novo. *Perez v. State*, 816 N.W.2d 354, 356 (Iowa 2012). Here, Ramirez's claims of ineffective assistance of counsel call for de novo review. *Diaz v. State*, 896 N.W.2d 723, 727 (Iowa 2017). Even under de novo review, we accord weight to the district court's credibility findings. *Ledezma v. State*, 626 N.W.2d 134, 141 (Iowa 2001).

To succeed, Ramirez must establish both: (1) counsel failed to perform an essential duty, and (2) that failure resulted in prejudice. *See Strickland v.*

*Washington*, 466 U.S. 668, 687 (1984). To establish prejudice, he must show a reasonable probability exists that, but for counsel's errors, the result of the proceeding would have been different. *State v. Carroll*, 767 N.W.2d 638, 641 (Iowa 2009). In a guilty-plea case, the prejudice element "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). To satisfy the prejudice requirement under *Hill*, Ramirez must show a reasonable probability exists that, but for counsel's faulty advice, he would not have pleaded guilty and would have insisted on going to trial. *See id.; see also State v. Straw*, 709 N.W.2d 128, 138 (Iowa 2006). In an immigration-consequences case, an applicant "must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010).

Whether defense counsel had an actual conflict of interest is a mixed question of law and fact. *State v. Mulatillo*, 907 N.W.2d 511, 517 (Iowa 2018) (applying de novo review to underlying question whether constitutional right to counsel was violated). Ramirez argues his case under both the Sixth Amendment to the U.S. Constitution[5] and Article I, Section 10 of the Iowa Constitution.[6]

---

[5] "In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for [their] defence." U.S. Const. Amend. VI.

[6] "In all criminal prosecutions, and in cases involving the life, or liberty of an individual the accused shall have a right to . . . have the assistance of counsel."

### 1. Attachment of Right to Counsel

Ramirez first contends Said provided ineffective assistance of counsel when he failed to advise Ramirez of the consequences of "turning himself in" at the DOT. Because Said offered the alleged bad advice before a criminal investigation started, the State contends Ramirez did not yet enjoy the constitutional right to assistance of counsel.

Both the Sixth Amendment and Article I, Section 10 provide an "accused" with the right to "the assistance of counsel." The "right to counsel is the right to the *effective* assistance of counsel." *See Strickland*, 466 U.S. at 686 (emphasis added) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970)); *State v. Schlitter*, 881 N.W.2d 380, 388 (Iowa 2016). Conversely, "[w]ithout a right to counsel, a defendant also has no commensurate right to effective assistance from that counsel." *State v. Dudley*, 766 N.W.2d 606, 617 (Iowa 2009) (citation omitted).

The district court ruled Ramirez was not entitled to counsel when going to the DOT. The court cited *State v. Senn*, for the proposition that the right to counsel "under both the State and Federal Constitutions 'attaches at or after the initiation of adversary proceedings against the defendant, whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.'" 882 N.W.2d 1, 8 (Iowa 2016) (quoting *State v. Hensley*, 534 N.W.2d 379, 382 (Iowa 1995)). The court rejected Senn's claim he had a right to counsel before taking a breath test when a police officer stopped his car under suspicion of driving while intoxicated. *Id.* at 6. The three-member plurality opinion concluded the right to counsel under the Iowa Constitution does not attach until formal charges have been filed. *Id.* at

31.[7]  Ramirez contends because *Senn* was a plurality opinion, the question of when the right to counsel attaches was left open.[8]

After the parties filed their briefs in the instant case, the Iowa Supreme Court decided *Ruiz v. State*, 912 N.W.2d 435 (Iowa 2018), which addressed the attachment of the right to counsel in nearly identical circumstances.  The same attorney, Michael Said, advised his immigration client, who had a pending application for cancellation of removal, to obtain a driver's license.[9]  *Ruiz*, 912 N.W.2d at 437-38.  Without asking about any past conduct, Said arranged for Ruiz to apply for a driver's license.  *Id.*  In doing so, the DOT discovered Ruiz had previously registered vehicles under a false Social Security number.  *Id.*  The same DOT investigator involved in Ramirez's case asked Ruiz to fill out a voluntary statement and charged him with the same offense as Ramirez, fraudulent practice in the third degree.  *See id.*  Ruiz also ultimately pleaded guilty to fraudulent practice in the fourth degree.  *Id.* at 438.  As a result, Ruiz's application for cancellation was denied, and he was subjected to removal proceedings.  *Id.*  Ruiz filed for PCR, asserting Said had breached an essential duty by advising him to obtain a driver's license.  *Id.*

---

[7] Chief Justice Cady filed a separate opinion concurring in the result only.

[8] Justices Wiggins, Hecht, and Appel dissented.  Justice Wiggins wrote to criticize the plurality for disregarding the applicability of the right to counsel under the Iowa Constitution "in cases involving the life, or liberty or an individual."  *Senn*, 882 N.W.2d at 32-33 (Wiggins, J., dissenting) (quoting Art. I, sect. 10).  Justice Appel wrote to conclude the right to counsel under the Iowa Constitution attached at the "critical stage of the prosecution" when Senn was confronted with an implied-consent request.  *Id.* at 68 (Appel, J., dissenting) (citing *United States ex rel. Hall v. Lane*, 804 F.2d 79, 81 (7th Cir. 1986) ("The Sixth Amendment, . . . guarantees the right to counsel during all critical stages of prosecution." (citations omitted)).

[9] Said has been disciplined for ethical violations in his representation of clients, particularly in his immigration practice.  *See, e.g.*, *Iowa Supreme Ct Attorney Disciplinary Bd. v. Said*, 869 N.W.2d 185 (Iowa 2015).

Our supreme court, ruling under both the federal and state constitutions, found, "[T]he right [to counsel] 'does not attach until a prosecution is commenced.'" *Id.* at 439 (quoting *Rothgery v. Gillespie Cty*, 554 U.S. 191, 198 (2008)). "A prosecution commences at 'the initiation of adversary judicial criminal proceedings.'" *Id.* (quoting *Rothgery*, 554 U.S. at 198).[10] The court noted at the time of the alleged breach, Ruiz had not been arraigned or even charged; in fact, "no criminal investigation had even begun." *Id.* Because the right to counsel had not attached, Ruiz could not show a denial of *effective* assistance of counsel. *Id.*[11]

Ramirez seeks to distinguish his case from *Senn* and *Ruiz* by arguing a criminal investigation commenced when Said informed the investigator of Ramirez's situation by email the day before their meeting. He contends the right to counsel attached because he was "accused" by virtue of a criminal investigation before any prosecutorial involvement. Here, the DOT investigator used the false Social Security number disclosed by Said to track down Ramirez's fraudulent registration, secured a signed admission from Ramirez, and issued a citation at the in-person meeting. Ramirez asserts the DOT investigator would not have connected him with any unlawful conduct without Said's tip-off. Said acknowledged knowing that disclosure would result in criminal charges, but he revealed the otherwise privileged information anyway.

---

[10] Neither article I, section 10 nor the Sixth Amendment apply in immigration cases. *Ruiz*, 912 N.W.2d at 441.

[11] Justice Appel, joined by Justices Wiggins and Hecht, specially concurred, agreeing the right to counsel under either the federal or state constitution did not attach when Ruiz's lawyer "gave him poor advice in his office. At that point, the adversarial power of the government had not focused on him at all. Indeed no investigation of any kind was underway." *Id.* at 444 (Appel, J., specially concurring). But the special concurrence did not agree with "the bright-line rule that invariably requires that the state file a piece of paper in a court in order for the right to counsel to attach." *Id.* at 444.

Ramirez's case bears a factual difference from *Ruiz*. Here, Said emailed the DOT investigator a day in advance, enabling the investigator to verify the incriminating information and obtain a "voluntary statement" from Ramirez during the meeting. But we cannot find this slight departure justifies finding the right to counsel attached before the alleged breach of duty.

In another recent right-to-counsel case, *State v. Green*, the supreme court reiterated the principle that "the criminal prosecution required by [the Sixth Amendment] exists once a complaint has been filed and an arrest warrant has been issued." 896 N.W.2d 770, 777 (Iowa 2017). But, "once a complaint has been filed and an arrest has occurred, a police interview is no longer a criminal investigation. Instead, it takes the shape of an accusation." *Id.* In *Green*, the defendant willingly participated in a police interview without being Mirandized.[12] He was later charged with murder. The court found

> Green was not formally or informally an "accused," and the interview was not a "criminal prosecution" . . . . Green appeared voluntarily . . . . He could have left . . . or stopped the interview at any time. There was no warrant for his arrest, and there were no charges filed against him.

*Id.* at 778.

When Ramirez attended the DOT meeting, some investigation had taken place; the investigator interviewed Ramirez and obtained a "voluntary statement" admitting he "made up a Social Security number to register a car." The investigator did not issue the citation until the end of the meeting. The investigator noted he was not arresting Ramirez. Even if Said's email disclosure "tipped off" the

---

[12] *Miranda v. Arizona*, 384 U.S. 436, 498 (1966).

investigator, we cannot say from the existing precedents or the circumstances of Ramirez's case that either an investigation or a prosecution were underway at the time of the alleged breach. *See Ruiz*, 912 N.W.2d at 443 ("Bad legal advice can lead to a criminal investigation in a variety of contexts. . . . Still, it isn't ineffective assistance unless the bad advice occurs in a criminal case or an Iowa case 'involving the life, or liberty of an individual.'"). Accordingly, the right to effective counsel had not yet attached.[13]

### 2. Representation While Conflicted

Ramirez next contends Said provided ineffective assistance of counsel in continuing to represent him while being listed as a witness for the State.[14] When asked at the PCR hearing whether he reviewed the trial information with Ramirez or informed Ramirez he was listed as a witness, Said testified, "More than likely we would have told him, yeah." But in depositions, Said testified he never discussed the possibility he could testify with Ramirez because the case never went to trial. Said further testified if the case *had* gone to trial, he would have withdrawn. Ramirez characterizes Said's representation before and during the plea proceedings as a "glaring conflict of interest."

---

[13] In reply briefing, Ramirez raises Said's alleged violations of the Iowa Rules of Professional Conduct as proof he breached a duty and argues it is good public policy for the right to counsel to attach earlier in this case. Ramirez complains, "It would be fundamentally unfair to enable an attorney to continue this business model of retaining clients, gaining confidential information, disclosing that confidential information to law enforcement to initiate criminal charges, and then demand another retainer to represent them" in the criminal case. First, we generally do not address issues first raised in a reply brief. *Villa Magana v. State*, 908 N.W.2d 255, 260 (Iowa 2018). Second, the principles outlined above still govern: whatever duties Said may have breached—those of professional competence or lawyerly ethics—the constitutional right to effective assistance had not yet attached at the time of the conduct alleged here.

[14] The State does not dispute the right to counsel had attached at this point.

The State points out that in the conflict-of-interest context, appellate courts do not require a showing of *Strickland*-type prejudice—only the existence of an "actual" conflict of interest, which is a conflict that "adversely affects counsel's performance." *See Mickens v. Taylor*, 535 U.S. 162, 174 (2002); *State v. Vaughan*, 859 N.W.2d 492, 500 (Iowa 2015). The State contends no evidence proves any aspect of Said's performance was motivated by his appearance on the State's witness list. The State also asserts Ramirez waived any potential conflict of interest by pleading guilty because the claimed conflict was not intrinsic to the guilty plea.[15]

### a. Objection Intrinsic to Guilty Plea

Generally, when criminal defendants plead guilty, they waive all objections and defenses, including claims concerning the performance of counsel. *Castro v. State*, 795 N.W.2d 789, 792 (Iowa 2011). But our supreme court has recognized an exception to this rule for irregularities that are intrinsic or, in other words, bear on the knowing and voluntary nature of the plea. *Id.* A claim raised by a postconviction-relief applicant may survive a guilty plea if counsel's pre-plea performance rendered the plea involuntary or unintelligent. *See id.* at 793 (discussing ineffective-assistance claim).

Before accepting a guilty plea, the district court must decide if it is being entered voluntarily and intelligently and has a factual basis. Iowa R. Crim. P. 2.8(2)(b). The court must address defendants personally and determine they

---

[15] The State complains Ramirez is presenting a different issue on appeal than he did in the PCR proceedings. Because we read his amended PCR application as encompassing this issue, we find error was preserved.

understand, among other things, that they have "the right to assistance of counsel, the right to confront and cross-examine witnesses against the defendant . . . [and] the right to present witnesses in [their] own behalf." *Id.* at 2.8(2)(b)(4).

Although the court engaged in a short colloquy with Ramirez facilitated by an interpreter, and these rights were reiterated in the written plea, we are not convinced Ramirez could understand the import of the trial rights he was giving up without knowing the State planned to call his own attorney as a witness against him. Because the record does not show Ramirez realized his attorney—retained to represent him on both immigration and criminal matters—was listed as one of two witnesses for the prosecution, we cannot be satisfied Ramirez fully appreciated the ramifications of pleading guilty. Said's pre-plea advice was tainted by the fact he tipped off authorities to Ramirez's crime and would be summoned to testify about his client's wrongdoing if the plea negotiations failed.[16] Ramirez's unawareness of his attorney's potential conflict of interest impacted the knowing and voluntary nature of the plea. *See Castro*, 795 N.W.2d at 792. Ramirez could not accurately assess the wisdom of accepting the plea offer, as recommended by his attorney, while in the dark about the State's intention to extract incriminating information from his attorney should the case proceed to trial. Because his conflict claim was intrinsic to the plea, Ramirez did not waive this issue by pleading guilty.

---

[16] We find it significant that Said believed being listed as a prosecution witness would have presented an actual conflict of interest had the case proceeded to trial. His belief undermines the State's argument on appeal that Said was not an essential witness and the prosecution could have proved its case by calling only the DOT investigator.

### b. Adverse Effect of Conflict on Counsel's Performance

"A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness . . . ." Iowa R. Prof. Conduct 32:3.7.[17] Ramirez points to this rule in asserting Said's conflict of interest. While the rules of professional conduct provide guidance on the conflict question, they are not alone dispositive. *See State v. McKinley*, 860 N.W.2d 874, 881 (Iowa 2015).

The parties debate the relevance of the rule, given the fact Ramirez entered a guilty plea. The State insists any potential conflict never materialized into an actual conflict because the case never proceeded to trial and it was unlikely Said would have been called to testify if it had. But Ramirez cites *State v. Vanover*, where the district court removed an attorney who was listed as a witness for the State over the defendant's objections *before* the case went to trial. 559 N.W.2d 618, 625 (Iowa 1997). The supreme court held, "A trial court may . . . disqualify counsel if necessary to preserve the integrity, fairness, and professionalism of trial court proceedings." *Id.* at 626.

Where the district court does not inquire into a potential conflict before trial, reversal is not automatic. "[T]he defendant still has to establish that the alleged conflict materialized into an *actual* conflict." *Vaughan*, 859 N.W.2d at 500 (citing *Mickens*, 535 U.S. at 172–74).[18] To demonstrate an actual conflict, Ramirez must show being listed as a State's witness adversely affected Said's performance. *See*

---

[17] The rule lists three exceptions: (1) the lawyer's testimony relates to an uncontested issue, (2) the testimony relates to nature and value of legal services rendered in the case, or (3) disqualification of the lawyer would work a substantial hardship on the client. Iowa R. Prof. Conduct 32:3.7(a)(1)–(3).

[18] The Sixth Amendment requires automatic reversal "only when the trial court refuses to inquire into a conflict of interest over defendant's or counsel's objection." *Vaughan*, 859 N.W.2d at 500.

*id.* "[A]n adverse effect occurs when counsel fails to pursue a plausible strategy or tactic due to the existence of a conflict of interest." *Id.* at 501 (citing *Noe v. United States*, 601 F.3d 784, 790 (8th Cir. 2010)).

It is hard to glean Said's exact motivation for continuing to represent Ramirez without informing him of the potential conflict. But the record reveals gaps in the efforts exerted by Said (perhaps cognizant of his multiple prior disciplinary actions) on Ramirez's behalf, suggesting plausible defense strategies were not explored. Said's conduct during plea negotiations suggests a "serious potential that [Said's] loyalties would . . . be divided" between Ramirez and himself. *See Vanover*, 559 N.W.2d at 631.

Significantly, Said did not ask the State to remove him as a witness or raise the conflict for the court to address. And he did not secure a waiver of the potential conflict from Ramirez, or even recall informing his client of the potential he would testify for the State should the matter proceed to trial. It is the rare case where the State lists defense counsel as one of the key fact witnesses against the client. *See, e.g.*, *id.* at 625 (recognizing defense attorney listed as prosecution witness because he obtained statements from co-defendants had a "serious potential conflict of interest"). A more common scenario is the danger of divided loyalties based on the representation of potential witnesses against the client. *See, e.g.*, *McKinley*, 860 N.W.2d at 877 (public defenders in the same office represented the defendant and witnesses against him); *Vaughan*, 859 N.W.2d at 498–99 (counsel represented both the defendant and a potential witness against defendant); *Ibarra v. State*, No. 14-2007, 2015 WL 6508952, at *2 (Iowa Ct. App. Oct. 28, 2015) (public defenders in the same office had represented decedent and several

witnesses against the defendant in a murder trial). Given Said's belief he would have been required to withdraw if the case proceeded to trial, we find his performance in negotiating a favorable plea and advising his client about the wisdom of accepting the plea offer was adversely affected.

In addition, Said's own conduct could have been the subject of pretrial defense motions. As Ramirez suggests on appeal, a plausible tactic would have been seeking to suppress the original email from Said to the DOT investigator based on a breach of attorney-client privilege. Because of his conflict, Said was unlikely to file such a motion as it could expose him to potential attorney discipline. Said's decision to share incriminating facts about his client and his resulting position as a State's witness, left counsel unable to see or pursue the full range of options available in Ramirez's defense and, thus, adversely affected his representation. *See Vaughan*, 859 N.W.2d at 501 (explaining "an adverse effect occurs when counsel fails to pursue a plausible strategy or tactic due to the existence of a conflict of interest" (citation omitted)). A non-conflicted attorney would have had the freedom to follow a strategy to suppress the email and the resulting tip-off to law enforcement.[19]

---

[19] We look to Justice Appel's special concurrence in *Vaughan* where the attorney helped a witness approach the State with evidence against his own client:

> To me, it is astonishing that a lawyer representing an accused in a criminal matter would facilitate the discovery of evidence by the prosecution adverse to his or her client. Yet, this is precisely what occurred here. When Vaughan's attorney learned from Cline [whom the attorney also represented] that Cline wanted to speak to the prosecutor about Vaughan, it was obvious Cline did not intend to assist in Vaughan's defense. At that point, Vaughan's attorney should have refused to contact the prosecutor on behalf of Cline. Instead, he facilitated the prosecution's receipt of evidence adverse to his client. When he did so, he was not acting zealously on behalf of Vaughan. It was a disloyal act.

*Vaughan*, 859 N.W.2d at 503.

Further, Said did not depose the State's listed witnesses to test the strength of the prosecution's case, explain to Ramirez what the witnesses would say, or determine the viability of filing various pretrial motions. A non-conflicted attorney could have done so without the absurdity of having to question himself.

The State emphasizes "there was no trial in this case, and trial was never likely." But a trial was not essential to showing Said's representation through the plea proceedings was adversely affected by the conflict. The State insists Ramirez's singular strategy was to avoid trial and plead guilty. That is true only to the extent Ramirez wished to remain eligible for cancellation of removal by accepting the plea offer—his entire representation by Said, an immigration attorney, was motivated by a desire to avoid removal proceedings. By pleading guilty as he did here, Ramirez did not escape that consequence. The pull between Said's obligation to testify if called by the State at trial and his duty to vigorously represent Ramirez at the plea stage materialized into an actual conflict of interest adversely affecting his representation of Ramirez. His counsel's actual conflict of interest rendered Ramirez's plea unknowing and involuntary. We reverse the conviction and sentence and remand for further proceedings consistent with this opinion.

Having concluded reversal of Ramirez's conviction is warranted on the conflict-of-interest ground, we could stop here. But because we find an alternative ground for reversal based on attorney Said's failure to adequately advise Ramirez of the immigration consequences of his guilty plea, we choose to address that issue as well.

### 3. Guilty Plea to a Crime of Moral Turpitude

Ramirez contends Said was remiss in recommending he plead guilty to fourth-degree fraudulent practice without adequately advising him of the immigration consequences—specifically that it was a crime of moral turpitude that would result in Ramirez losing eligibility for cancellation of removal. The State argues Said met his duty by generally advising Ramirez the plea could have adverse immigration consequences because characterization of the crime as one of moral turpitude was an unsettled question of federal immigration law. The State further contends Ramirez is unable to show prejudice because he had no plausible chance of acquittal and would not have reasonably rejected the plea offer to a lesser offense.[20]

An attorney's performance is constitutionally deficient when the attorney fails to advise the defendant on the immigration consequences of pleading guilty. *Padilla*, 559 U.S. at 368; *Diaz*, 896 N.W.2d at 729. The applicant must show counsel's performance "fell below an objective standard of reasonableness." *Diaz*, 896 N.W.2d at 728 (citation omitted). In defining this standard, "We look to the practice and expectations of the legal community." *Id.* (citation omitted). If an applicant satisfies the first prong, the next step is proving prejudice. In this context,

---

[20] Ramirez also suggests, as he did at the PCR trial, that Said should have done more to negotiate a guilty plea to a misdemeanor arguably outside the class of offenses considered "crimes of moral turpitude" and therefore avoid ineligibility for cancellation of removal. He mentions this claim in passing, but it is not fully briefed for our review. Ramirez does not specify what statutory provision would have made for a more desirable plea offer. We will not consider this undeveloped argument beyond noting, again, the record reveals no factual basis for the plea to fourth-degree fraudulent practice. The record does show a factual basis for third-degree fraudulent practice, which is an aggravated misdemeanor and would have rendered Ramirez ineligible for cancellation of removal. *See Immigration Consequences*, *supra* 213–14.

an applicant proves prejudice by showing he or she would not have pleaded guilty and instead would have insisted on going to trial. *Id.* "This does not mean the defendant must show he or she would have prevailed at trial." *Id.* at 729. Only that "the 'decision to reject the plea bargain would have been rational under the circumstances.'" *Id.* (quoting *Padilla*, 559 U.S. at 372).

The district court found Said failed in an essential duty—Said knew the Eighth Circuit considered fraudulent practice to be a crime of moral turpitude and still did not specifically recall advising Ramirez of that fact. The court found Said "was personally aware that fraudulent practice in the fourth degree would be considered a crime of moral turpitude and result in the denial of [Ramirez's] cancellation of removal." On appeal, the State suggests the immigration consequences of the plea were debatable.[21] But the court found, "The deportation consequences of the particular plea were not unclear or uncertain to Said—he was fully aware of the consequences his client would face." The court concluded because a "reasonably competent" attorney would have advised a client of these consequences, Said failed in an essential duty. Upon our review of the record and giving appropriate weight to the district court's credibility assessments, we agree Said's performance fell below an objective standard of reasonableness.

---

[21] In support of this position, the State provides additional authority. *See Martinez v. Sessions*, 892 F.3d 655 (4th Cir. 2018); *Lozano-Arredondo v. Sessions*, 866 F.3d 1082 (9th Cir. 2017);. But it is difficult to see how these more recent cases from other circuits would excuse Said's deficient performance. The Eighth Circuit has concluded crimes involving fraudulent use of a Social Security number are crimes of moral turpitude. *See Guardado-Garcia v. Holder*, 615 F.3d 900, 902 (8th Cir. 2010) (conviction for fraudulent use of Social Security number under the Social Security Act constituted a crime of moral turpitude as involving an intent to deceive); *Lateef v. Dept of Homeland Security*, 592 F.3d 926, 929 (8th Cir. 2010) (the Board of Immigration Appeals correctly concluded that the crime of using an unlawfully obtained Social Security number is a crime of moral turpitude, as it involves an intent to deceive).

But, the district court went on to find Ramirez had not shown prejudice. The court saw no reasonable probability Ramirez would not have pleaded guilty and insisted on going to trial given the fact he admitted his actions to the DOT. The court concluded forgoing a plea to a lesser offense would not have been rational and negotiating a plea to a different subsection—not considered a crime of moral turpitude—would have been unlikely.

We disagree with the district court on the prejudice prong. Ramirez testified if he had been told pleading guilty would have resulted in his removal from the country, he would have gambled on a trial. By going to trial, Ramirez would have faced conviction for third-degree fraudulent practices, categorically a crime that would make him ineligible for cancellation of removal, as an aggravated misdemeanor.[22] But pleading guilty to fourth-degree fraudulent practice— considered to be a crime of moral turpitude—posed the same risk of removal.

If Ramirez had been correctly advised of the immigration consequences, he could have "rationally decided to hold the State to its burden of proof" since he had nothing to lose by doing so. *Diaz*, 896 N.W.2d at 734; *see State v. Ali*, No. 16-0378, 2017 WL 936112, at *4 (Iowa Ct. App. Mar. 8, 2017) (recognizing "different calculus" confronting non-U.S. citizen in evaluating plea offer and vacating guilty plea where immigrant defendant established he would not have pleaded guilty had he known deportation consequences of conviction); *see also People v. Morones-Quinonez*, 363 P.3d 807, 811 (Colo. App. 2015) (explaining "strength of the

---

[22] An aggravated misdemeanor carries other immigration consequences including mandatory detention and a permanent reentry bar. *See* Univ. of Iowa Coll. of Law Advanced Immigration Law & Policy, *Immigration Consequences for Iowa Criminal Statutes* (2015) 213.

evidence against the defendant may not be as probative of rationality as it would be in a nonimmigration case" (citation omitted)); *Sial v. State*, 862 N.E.2d 702, 706 (Ind. Ct. App. 2007) (reversing denial of postconviction relief—where applicant had been living in United States for twenty years and had a wife and American-citizen daughter—to find he would have forgone plea and proceeded to trial).  Ramirez had been in the United States for fifteen years.  He was married and the younger of his two children was born in the United States.  He testified he wanted to stay in the United States and would not have pleaded guilty if he had known it would result in his removal.  Ramirez established it would have been rational to reject the plea agreement and that he received ineffective assistance.

With a non-conflicted attorney who competently advised him about the immigration consequences, Ramirez might have also pursued pretrial evidentiary claims or insisted on negotiating a more favorable plea.  Based on this ineffective assistance claim, as well as the conflict-of-interest ground, we reverse Ramirez's conviction and remand for further proceedings.

**REVERSED AND REMANDED.**