# IN THE COURT OF APPEALS OF IOWA

No. 17-1062
Filed August 15, 2018

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**ERIC GUADALUPE DAVILA,**
    Defendant-Appellant.

_____

Appeal from the Iowa District Court for Wapello County, Shawn R. Showers,

Judge.


Eric Davila challenges his conviction and sentence for second-degree

murder. **AFFIRMED.**


Mark C. Smith, State Appellate Defender, and Bradley M. Bender, Assistant

Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Kelli A. Huser, Assistant Attorney

General, for appellee.


Considered by Potterfield, P.J., and Bower and McDonald, JJ.

**MCDONALD, Judge.**

Eric Davila was charged with murder in the first degree for the killing of his roommate, Hugo Hernandez. A jury found Davila guilty of the lesser-included offense of murder in the second degree, in violation of Iowa Code section 707.3 (2016). Davila challenges his conviction and sentence on appeal. With respect to his conviction, Davila contends the district court abused its discretion in denying his motion for a mistrial. He also contends his trial counsel provided constitutionally deficient representation in failing to challenge a jury instruction regarding malice aforethought. With respect to his sentence, Davila contends the district court ordered restitution without determining Davila's reasonably ability to pay the same.

The record reflects the following. Davila and Hernandez shared an apartment. Due to a variety of circumstances, Davila began having issues with Hernandez. On the day at issue, Davila and Hernandez were "hanging out" at Davila's brother's house while Davila was doing laundry. Hernandez had his handgun with him. At some point during the day, Davila and Hernandez loaded a clip of ammunition into the handgun.

Later, Davila called his friends Terry Baker and Kinda Short to see if he and Hernandez could come out to their residence, and they agreed. Baker and Short picked up Davila and Hernandez late in the evening, and they went to Baker and Short's house. The group sat in the living room; they talked and smoked methamphetamine and marijuana into the early morning hours. Then the group moved to the basement. Davila and Hernandez sat quietly in some chairs while Baker and Short were tending to other things. At some point, Davila got up, walked

to the other side of the room, picked up Hernandez's handgun, walked over to Hernandez, held the gun approximately one foot from Hernandez's head, pulled the trigger, and shot and killed him.

Baker and Short did not witness the shooting, but they responded to the gunshot. Baker went to Hernandez and saw the gunshot wound in his head. Baker asked Davila for the weapon, and Davila complied. Davila said he would take care of the mess and dispose of the body. Davila asked for a tarp. Short became hysterical. She left the residence and drove to her brother's house. Short's brother, Gary Short, was the owner of the house where Kinda Short and Baker resided. Gary went to the house. When he arrived, Baker told him Davila shot a guy and Davila wanted a tarp. Baker told him they needed to leave the house. They did. Gary and Baker went back to Gary's residence, and Gary called 911.

The sheriff's department responded to the emergency call. When the sheriff's department arrived at Baker and Short's residence, they found Davila kneeling outside. Hernandez was dead. He was rolled up in a rug in the basement. Davila was arrested at the scene and interviewed at the Wapello County Law Enforcement Center. During the interview, Davila admitted to shooting Hernandez and explained why he did it. Later in the interview, Davila stated he knew the gun was loaded but did not know there was a round in the chamber when he pulled the trigger. Two days later, Davila provided the authorities with a hand-written letter explaining why he shot Hernandez.

Davila was charged with first-degree murder. While in jail, he told others in the jail his reasons for killing Hernandez. One of the reasons was Hernandez was behind in his rent. Davila testified at trial. He claimed he was unaware there was

a bullet in the gun's chamber. He intended to "dry fire" at Hernandez to scare or play around with him because Hernandez previously called Davila a "bitch," which Davila thought was a sign of disrespect. The jury found Davila guilty of murder in the second degree.

With that background, we turn to the legal questions presented. Davila first contests the district court's denial of his motion for mistrial. The motion for mistrial arose during the prosecutor's closing argument. Prior to trial, the district court granted the State's motion in limine to prevent the defendant from making "[a]ny reference to any toxicology report(s) of the victim or testimony regarding the victim's level of intoxication or drug impartment on the date of the offense." The district court also excluded any reference to the fact "[t]he victim's personal effects included amounts of methamphetamine as located during the autopsy in or upon his clothing and/or person." During closing argument, the prosecutor argued Davila shot Hernandez while Hernandez was asleep. Defense counsel moved for mistrial, arguing the defendant was prejudiced because it could not rebut the theory the victim was sleeping because the district court had excluded evidence of toxicology reports showing the victim had high levels of methamphetamine and amphetamine in his blood system. The district court denied the motion. It reasoned the jury could still render a fair and impartial verdict. The district court also reasoned there was little prejudice here. It concluded, "[T]he jury is going to be able to determine, without the exact amount of methamphetamine that was found in the victim's system, that the individuals were using methamphetamine and that everybody there was having a hard time going to sleep and that usually methamphetamine keeps you up."

We cannot conclude the district court committed reversible error in denying the motion for mistrial. Trial courts enjoy wide discretion in granting or denying a motion for mistrial. *See State v. Huser*, 894 N.W.2d 472, 498 (Iowa 2017). We will not reverse the district court's denial unless its reasoning was untenable or clearly unreasonable. *See id.* Here, the defendant has not shown any ground for granting a mistrial. First, despite the defendant's contention to the contrary, the prosecutor did not violate the motion in limine by arguing the victim was asleep. The argument did not refer to the prohibited toxicology reports. Second, the argument was a fair inference from the evidence presented. The jury heard evidence regarding the location of the gunshot wound and what that meant in terms of where Hernandez's head was positioned at the time of the shooting. From this medical evidence, the prosecutor made an argument that Hernandez must have been asleep at the time of the shooting. There was certainly contrary evidence. Indeed, the stronger evidence is that Hernandez was awake at the time of the shooting. However, the contrary evidence does not make the prosecutor's argument impermissible.

Finally, even assuming the prosecutor's argument was an impermissible argument unsupported by the record, the defendant has not established the prosecutor's statements infringed or otherwise impaired Davila's right to fair trial. *See State v. Graves*, 668 N.W.2d 860, 869 (Iowa 2003) (setting forth the factors for prosecutorial misconduct claim); *State v. Jackson*, 587 N.W.2d 764, 766 (Iowa 1998) (noting reversal is only required when forbidden topic is so prejudicial that its effect on the jury cannot be corrected). Here, the State's case was strong. *See id.* (identifying the strength of the State's evidence as a relevant factor). The district

court issued cautionary instructions to mitigate any prejudice, instructing the jury that "[s]tatements, arguments, questions, and comments by the lawyers" were not evidence. *See State v. Musser*, 721 N.W.2d 734, 756–57 (Iowa 2006) (finding defendant was not prejudiced where the jury was instructed "to decide the defendant's guilt or innocence from the evidence and the law in these instructions, and that evidence did not include statements, arguments, and comments by the lawyers"); *State v. Reeves*, No. 13–0908, 2014 WL 2884864, at *4–5 (Iowa Ct. App. June 25, 2014) (holding the defendant failed to establish prejudice where the evidence was strong and the jury was properly instructed to consider only the evidence). Finally, the defendant's counsel directly and strongly rebutted the prosecutor's argument. If anything, the prosecutor lost credibility with the jury by making the argument. "[W]e are faced with the firmly established rule that misconduct of the prosecutor does not require a new trial unless it appears to have been so prejudicial as to deprive defendant of a fair trial." *State v. Mercer*, 154 N.W.2d 140, 142 (Iowa 1967). The prosecutor's conduct did not deprive Davila of a fair trial. The district court did not abuse its considerable discretion in denying the motion for mistrial.

Davila next contends his counsel provided constitutionally deficient representation in failing to object to a jury instruction permitting the jury to infer he acted with malice aforethought from his use of a dangerous weapon. Instruction number twenty-seven stated: "Malice aforethought may be inferred from the defendant's use of a dangerous weapon." Davila argues this instruction was not appropriate because he did not know the gun was loaded at the time of the killing and thus he did not foresee the consequences of his actions. He asserts the

instruction requires the jury to conclude he acted with malice without regard to his claim that he was unaware of the bullet in the gun's chamber.

We review this constitutional claim de novo. *See State v. Straw*, 709 N.W.2d 128, 133 (Iowa 2006). To prevail, Davila must show "(1) his trial counsel failed to perform an essential duty, and (2) this failure resulted in prejudice." *Id.* (citing *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984)). However, if Davila is unable to satisfy either element, then his claim fails. *See State v. Thorndike*, 860 N.W.2d 316, 320 (Iowa 2015).

Davila cannot establish his counsel failed to perform an essential duty. While there may be certain circumstances in which the instruction at issue would not be appropriate, *see State v. Green*, 896 N.W.2d 770, 780-81 (Iowa 2017), this case is not such a case. The instruction was an accurate statement of Iowa law. *See Green*, 896 N.W.2d at 780. There was substantial evidence to support giving the instruction. In particular, there was evidence the defendant loaded a clip into the weapon earlier in the evening and then fired the gun at Hernandez. There was also evidence of Davila's motive for wanting to kill Hernandez. *See State v. Caples*, 857 N.W.2d 641, 646 (Iowa Ct. App. 2014) ("Although motive is not an element of murder, motive evidence is probative of the question of whether the defendant acted with malice aforethought."). The supreme court has approved the use of the instruction where a defendant has "discharged a firearm at a victim." *Id.* (citing *State v. Ambrose*, 861 N.W.2d 550, 560–61 (Iowa 2015)). Contrary to the defendant's assertion, the instruction does not require the jury to find in favor of the State. If the jury rejected Davila's testimony, the challenged instruction permitted, but did not require, the jury to infer malice from the use of a dangerous

weapon. Counsel has no duty to interpose a meritless objection or raise a meritless issue. *See State v. Lopez*, 872 N.W.2d 159, 169 (Iowa 2015). Because Davila failed to establish a breach of duty, his claim of ineffective assistance of counsel does not entitle him to any relief. *See Thorndike*, 860 N.W.2d at 320.

Davila also raises a challenge to the restitution ordered. Specifically, he contends the district court erred in ordering him to make restitution to the crime victim assistance program without first determining Davila's reasonably ability to pay the same. Restitution orders are reviewed for legal error. *See State v. Hagen*, 840 N.W.2d 140, 144 (Iowa 2013).

We cannot conclude the district court committed reversible legal error. Iowa Code section 910.2(1) provides "the sentencing court shall order that restitution be made by each offender to the victims of the offender's criminal activities, to the clerk of court for fines, penalties, surcharges, and, to the extent that the offender is reasonably able to pay, for crime victim assistance reimbursement." At sentencing, the district ordered the defendant to pay court costs, victim restitution in the amount of $150,000 pursuant to Iowa Code section 910.3B, and restitution to the crime victim assistance program. The district court declined to require the defendant to pay his attorney fees, finding the defendant did not have the reasonable ability to pay the same. From the district court's finding regarding the defendant's inability to pay attorney's fees, we can infer the district court exercised its discretion and determined the defendant did have the reasonable ability to pay other restitution. The district court's terse statement is sufficient. If Davila seeks to challenge the amount of restitution or the restitution plan of payment, he can pursue a challenge pursuant to Iowa Code section 910.7.

For the above-stated reasons, we affirm the defendant's conviction and sentence.

**AFFIRMED.**