# IN THE COURT OF APPEALS OF IOWA

No. 20-1112
Filed August 18, 2021

**JEREMY MICHAEL CORY,**
    Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
    Respondent-Appellee.
_____

Appeal from the Iowa District Court for Story County, James C. Ellefson, Judge.

A prisoner appeals the denial of his second application for postconviction relief. **AFFIRMED.**

Andy Dunn and Jessica Donels of Parrish Kruidenier Dunn Gentry Brown Bergmann & Messamer L.L.P., Des Moines, for appellant.

Thomas J. Miller, Attorney General, and Kyle Hanson, Assistant Attorney General, for appellee State.

Considered by Bower, C.J., Tabor, J., and Potterfield, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2021).

**TABOR, Judge.**

A jury convicted Jeremy Cory of first-degree murder in the 2014 shooting death of his wife, Vallerie. We upheld his conviction on direct appeal after finding "overwhelming evidence" supported the guilty verdict. *See State v. Cory*, No. 14-1436, 2015 WL 7567527, at *1 (Iowa Ct. App. Nov. 25, 2015). He first sought postconviction relief (PCR) in 2016. The district court dismissed his application. We affirmed but noted Cory could pursue his ineffective-assistance-of-counsel claims in a second PCR action. *See Cory v. State*, No. 16-2059, 2018 WL 2084906, at *3 (Iowa Ct. App. May 2, 2018). He did just that. But the district court again denied relief. Cory now complains both his trial and appellate counsel were ineffective in numerous ways. As a threshold issue, he invites us to adopt a new harmless-error standard when resolving his ineffective-assistance-of-counsel claims under article I, section 10 of the Iowa Constitution.

Because our supreme court has not yet addressed whether Iowa should adopt its own standard for deciding ineffective-assistance claims under the state constitution, we decline Cory's invitation. And because Cory fails to meet his burden of proving either a breach of duty or prejudice under *Strickland v. Washington*, 466 U.S. 668, 687 (1984), we affirm the denial of relief.

**I. Facts and Prior Proceedings**

The State charged Cory with first-degree murder, a class "A" felony, after officers found his wife's decomposing body in an upstairs bedroom while executing

a search warrant at the couple's home.[1]  Before trial, the defense moved to suppress Cory's statements to police under the Fifth and Sixth Amendments.  The motion alleged his consumption of alcohol and pain medication before the interview rendered his statements involuntary.  The district court denied the motion to suppress.

Also before trial, the State moved to exclude all evidence of Cory's intoxication at the time of his arrest and his history of alcohol use based on his failure to timely raise intoxication as an affirmative defense.  The court agreed evidence related to Cory's alcoholism (or reputation as an alcoholic) would be inadmissible because it related to the intoxication defense.  Yet the court suggested Cory could offer direct proof of his alcohol use during the four days between his alleged discovery of his wife's body and his arrest to explain his suspicious conduct.  After conferring with the attorneys, the court clarified that the defense would still need to prove relevance to admit that evidence at trial.

Despite the court's ruling, defense counsel sought to ask potential jurors about their experiences with alcoholism and intoxication.  Counsel urged that knowing the jurors' views on alcohol abuse was crucial to Cory's case outside of the intoxication defense.  Disagreeing, the court denied the defense request.  Counsel argued for the record that her inability to weed out jurors on this basis violated Cory's constitutional rights.  The court rejected that argument.

---

[1] Police obtained a search warrant after Cory lied during a welfare check on the victim; Cory professed he did not want them to go upstairs because he had a marijuana growing operation there.  When officers returned with the warrant to search for illegal drugs, they discovered the body.  The medical examiner determined Vallerie had been dead for at least forty-eight hours and may have been killed up to seven days before police discovered her body.

After an eight-day trial, the jury found Cory guilty as charged. The district court sentenced him to life in prison without the possibility of parole. On direct appeal, Cory challenged his conviction on several grounds, including the court's limitation on voir dire. Plus, Cory argued his trial counsel should have moved to suppress under article I, section 10 of the Iowa Constitution, as well as alleging federal constitutional grounds. In resolving his claims, we acknowledged the district court went too far by prohibiting all discussion of alcohol abuse during jury selection. But we found the error harmless and affirmed the conviction. *Cory*, 2015 WL 7567527, at *10. And we preserved the ineffective-assistance claim for further record development. *Id.* at *11. Procedendo issued in February 2016.

Two months later, Cory filed his first application for PCR. He alleged (1) his trial counsel rendered ineffective assistance by advising him not to testify; (2) the prosecution withheld exculpatory evidence; and (3) the cumulative effect of trial counsel's errors denied him a fair and impartial trial. The State moved for summary disposition. PCR counsel resisted dismissal as "premature." Citing the lack of "evidence, affidavits, record, or testimony" in Cory's resistance, the district court granted the State's motion for summary dismissal; we affirmed. Procedendo issued in July 2018.

In January 2019, Cory filed his second PCR application, which included new claims against his trial, appellate, and first PCR counsel under both the Sixth Amendment and article 1, section 10 of the Iowa Constitution. He proposed the state constitution should recognize broader protection for criminal defendants by shifting the burden of proving prejudice to the State. In the alternative, Cory alleged that all the attorneys' errors, when taken together, denied him a fair trial.

To remedy those violations, Cory asked the court to reverse his conviction and order a new trial.

The district court addressed Cory's ineffective-assistance claims under the two-pronged *Strickland* test, reasoning, "This court has not seen any indication that either the Iowa Legislature or the Iowa Supreme Court would adopt a different Iowa standard." Applying that framework, the court held that neither trial nor appellate counsel breached their duties. And none of the alleged errors, individually or cumulatively, satisfied the test for prejudice. Because Cory did not prove either prong, the court denied relief. Finding no basis for granting a new trial, the court declined to consider the remaining claims related to Cory's first PCR counsel. Cory appeals.

## II. Scope and Standard of Review

We normally review PCR rulings for correction of legal error. *Castro v. State*, 795 N.W.2d 789, 792 (Iowa 2011). But when the action involves constitutional claims, such as ineffective assistance of counsel, we apply de novo review. *Linn v. State*, 929 N.W.2d 717, 729 (Iowa 2019).

## III. Analysis

### A. Ineffective Assistance of Counsel

In challenging the denial of his second PCR, Cory abandons his claims against his first PCR counsel. He now focuses on what his trial and appellate counsel did or did not do that led to his conviction. Before turning to those claims, we must address Cory's threshold question: should a harmless-error standard govern ineffective-assistance-of-counsel claims brought under article I, section 10 of the Iowa Constitution?

The State criticizes Cory's harmless-error proposal as "an extreme departure" from the widely accepted *Strickland* standard. It contends neither the constitutional provision nor related case law supports adopting a different prejudice standard, let alone harmless error. The State correctly notes that in recent cases, we declined to interpret the right to counsel provision of article I, section 10 differently from the Sixth Amendment.[2] *See Beloved v. State*, No. 17-1908, 2019 WL 1300224, at *1 (Iowa Ct. App. Mar. 20, 2019) (rejecting claim that district court should have applied "a less deferential standard" of prejudice under Iowa Constitution because supreme court has long followed federal framework); *Hicks v. State*, No. 18-1625, 2019 WL 4297874, at *3 (Iowa Ct. App. Sept. 11, 2019) (noting we are "not at liberty to overrule controlling supreme court precedent" and interpret right to counsel provision of article I, section 10 broader than its federal counterpart). Our unpublished decisions are persuasive rather than binding precedents. Yet we agree it is not for us to adopt a new standard under the state constitution when our supreme court has already established *Strickland* as the governing framework for all ineffective-assistance-of-counsel claims. So we opt to apply that same standard here.

To prevail on his claims of ineffective assistance, Cory must prove his trial and appellate counsel each failed to perform an essential duty and prejudice resulted. *See Strickland*, 466 U.S. at 687; *Ledezma v. State*, 626 N.W.2d 134, 141 (Iowa 2001) ("We judge ineffective assistance of appellate counsel claims against the same two-pronged test utilized for ineffective assistance of trial counsel

---

[2] Cory does not address those decisions in his reply brief.

claims."). We deny a claim if either prong is unproven. *State v. Boothby*, 951 N.W.2d 859, 863 (Iowa 2020). On the duty prong, Cory must show counsel "performed below the standard demanded of a reasonably competent attorney." *Ledezma*, 626 N.W.2d at 142. In deciding what is reasonable, we consider whether there was a strategic reason for counsel's omissions. *Id.*; *State v. Davis*, 951 N.W.2d 8, 16 (Iowa 2020). We are more likely to find a breach of duty when the record reveals "no possible strategic reason" for counsel's decisions. *Davis*, 951 N.W.2d at 17 (quoting *State v. Harris*, 891 N.W.2d 182, 186–87 (Iowa 2017)). As for prejudice, Cory must show there was a reasonable probability of a different outcome. *Boothby*, 951 N.W.2d at 863 (citations omitted).

Cory argues trial and appellate counsel were ineffective in several ways. These include: (1) failing to preserve error on juror prejudice after the denial of two challenges for cause and then not addressing that denial on direct appeal; (2) failing to identify article I, section 10 of the Iowa Constitution as a basis for suppressing his statements to police and then failing to raise the Sixth Amendment ground on appeal; (3) failing to obtain an expert witness to testify about alcohol abuse; (4) failing to challenge evidentiary issues concerning improper opinion testimony on appeal; and (5) failing to object to improper statements in the State's closing argument. We will address each claim in turn.

### 1. Jury Selection

Cory first contends his trial counsel performed below professional norms by failing to identify on the record which of the seated jurors he would have removed with peremptory challenges but for the district court's refusal to strike two jurors for cause. He argues under *State v. Neuendorf*, 509 N.W.2d 743 (Iowa 1993),

counsel had a duty to preserve error on the improper denial of his challenges for cause by showing the jurors who actually rendered his verdict were not impartial. Cory suggests that in failing to create that record, his attorney thwarted his chance for reversal of his conviction on direct appeal because—without those crucial facts—he could not show the court's error was prejudicial.

But as the State points out, Cory's argument presupposes the denial of his for-cause challenges was improper. Under *Neuendorf*, reversal may be warranted if the district court erred in denying a challenge for cause *and* that error led to prejudice by the seated jury. 509 N.W.2d at 746. The supreme court abandoned the "automatic reversal rule," holding that an improper denial of a challenge for cause "is not automatically a ground for reversal when the juror in question has been removed through the use of a peremptory challenge." *Id.* at 744 (overruling *State v. Beckwith*, 46 N.W.2d 20 (Iowa 1951), which reiterated that prejudice would be presumed if defendant was forced to use peremptory challenge to cure improper ruling on challenge for cause). Instead, the record must also show the partiality of the remaining jurors prejudiced the defendant. Cory focuses only on that latter part. Yet we need not discuss prejudice if the court made no error. *See State v. Mootz*, 808 N.W.2d 207, 222 (Iowa 2012) (noting *Neuendorf* provides a "remedy for a litigant who is wrongly denied a challenge for cause").

So we first ask whether the district court wrongly overruled Cory's challenges for cause. *See* Iowa R. Crim. P. 2.18(5)(k) (allowing challenge to prospective jurors "[h]aving formed or expressed such an opinion as to the guilt or innocence of the defendant as would prevent [them] from rendering a true verdict upon the evidence submitted on the trial"). The court has "broad discretion" in

ruling on those challenges. *Neuendorf*, 509 N.W.2d at 746. Here, the defense moved to strike prospective jurors R.D. and T.B., who had experiences with domestic abuse. Counsel questioned their ability to remain impartial given the State's allegation that Cory was hostile toward his wife. The court asked them if, despite their views, they could follow jury instructions and consider only the evidence presented by the parties in rendering a verdict. Both assured they could separate the evidence from their own experiences and remain objective when applying the law to the facts. To be sure, T.B. was less definitive than R.D., saying, "I think that I could" rather than "yes." But she added that the allegations of domestic violence in the State's case had no bearing on her determination of the defendant's guilt.

Given the jurors' responses, we discern no abuse of discretion in the denial of Cory's challenges for cause. The district court had no reason to believe that either R.D. or T.B. could not overcome their biases if seated on the jury. *See id.* (distinguishing *State v. Simmons*, 454 N.W.2d 866, 868 (Iowa 1990), in which the jurors affirmatively told the court "they would withhold judgment and presume the defendant innocent until the evidence proved otherwise"). The record shows neither potential juror held preconceived opinions about Cory's guilt or other aspects of the case based on their past experiences. So the court did not err in refusing to disqualify them for cause. Because the denial was proper, trial counsel had no duty to preserve error on juror prejudice following voir dire.

For that same reason, we reject Cory's claim that appellate counsel was ineffective by not addressing the improper denial of his challenges for cause. As the PCR court noted, "[t]here was nothing for trial counsel to preserve" and "this

was not an issue that presented any likelihood of success on appeal." Thus, Cory failed to prove trial and appellate counsel performed deficiently in handling issues related to jury selection.

### 2. Motion to Suppress Statements

As his second complaint, Cory argues he received ineffective assistance when trial counsel failed to raise an argument under article I, section 10 of the Iowa Constitution in moving to suppress his incriminating statements. Inversely, he asserts appellate counsel was remiss in raising the article I, section 10 argument on direct appeal but failing to address the preserved Sixth Amendment claim. According to Cory, those omissions constituted deficient performance and led to prejudice. But for trial counsel's error, Cory claims the court would have suppressed his statements under article I, section 10 because his right to counsel attached before the criminal complaint. As for appellate counsel's omission, Cory contends her failure to pursue his Sixth Amendment claim prevented him from seeking habeas corpus relief.

In denying both claims in the second PCR, the district court found neither trial nor appellate counsel breached a duty. *See State v. Evans*, 495 N.W.2d 760 (Iowa 1993). The *Evans* court acknowledged "the right to counsel may attach prior to the filing of a trial information or indictment, depending, in part, on the level of prosecutorial involvement." *Id.* at 764–65 (citing *State v. Jackson*, 380 N.W.2d 420, 423 (Iowa 1986)). But the court reiterated its preference for the bright-line federal rule—requiring "institution of formal proceedings." *See Evans*, 495 N.W.2d at 765. After reviewing *Evans* and related cases, the district court held:

> Whether the bright-line approach ultimately prevails in Article I, section 10 law, which seems likely, or the totality of the circumstances wins the day, the facts of this case would not support a finding or conclusion that Mr. Cory's right to counsel had attached at the time of the [Division of Criminal Investigation (DCI)] interrogation at the Huxley police station under either approach.

The court reasoned the prosecutors involved in Cory's case "did not have sufficient participation in the interrogation to cause the right to counsel to attach even under the totality of the circumstances approach."

On appeal, Cory insists the "extensive involvement of three prosecuting attorneys" after his arrest, but before the filing of a criminal complaint, triggered his right to counsel under article I, section 10.[3]  The State counters that the broader protection afforded under the state constitution does not apply before a criminal case is initiated.  We agree with the State on this point.

Cory acknowledges his interview with police occurred six hours before a DCI agent filed the criminal complaint.  Yet he argues: "Holding that he was not entitled to an attorney merely because the complaint had yet to be filed would allow the government to zero in on a suspect and question him in violation of his right to counsel."  He suggests the only reason the criminal complaint had not been filed when police questioned him was because the clerk's office was closed.  Even if we agreed with that premise, Cory's argument fails.

---

[3] Our supreme court has interpreted that provision as extending broader protections than the Sixth Amendment because not only does the right to counsel attach in "all criminal prosecutions," but also in "cases involving the life, or liberty of an individual."  *See State v. Young*, 863 N.W.2d 249, 279 (Iowa 2016) (clarifying "cases" language guarantees protections where "no formal criminal prosecution was or could be instituted").

Cory had no right to counsel under article I, section 10 during the police interview. *See State v. Green*, 896 N.W.2d 770, 778 (Iowa 2017) ("The adversarial process that gives rise to the right to counsel includes the accusatory stage, but excludes the investigatory stage."); *see also State v. Sewell*, 960 N.W.2d 640, 650 (Iowa 2021) (reiterating "view that the article I, section 10 right to counsel does not attach prior to the initiation of a case or prosecution"). While police were interviewing Cory at the station, prosecutors were at his home, assisting DCI agents in obtaining a second search warrant. In her deposition, then Story County Attorney Jessica Reynolds recalled waiting outside with other prosecutors for several hours as DCI agents executed the search warrant and secured the crime scene. According to her testimony, Reynolds had no interactions with Cory, who had left the house "long" before their investigation.

Thus, any involvement by prosecutors was to advance an ongoing police investigation. Contrary to Cory's claim that "prosecutorial forces" targeted him as the sole perpetrator from the onset, none of the prosecutors confronted Cory about his wife's murder. Nor did the prosecutors participate in or observe the police interview. Instead, they focused on assisting law enforcement with the search warrant and observing the crime scene. Once that investigation concluded, it was the DCI that filed the criminal complaint. The trial information came eight days after the complaint. Given this timeline, Cory's interview occurred during the investigatory stage, before he was entitled to the assistance of counsel under article I, section 10. *See Green*, 896 N.W.2d at 779 (noting "our constitution does not give the right to counsel as a protection from all police encounters"). Because his right to counsel had not attached at the time of the interview, counsel had no

duty to raise that argument in the motion to suppress. And the Sixth Amendment did not cover Cory's statements to police before formal charges were filed. So appellate counsel exercised proper judgment in declining to challenge the suppression ruling on that ground. Because neither claim is supported by law, Cory suffered no prejudice.

### 3. Expert Testimony

Cory next asserts trial counsel should have offered an expert opinion on his alcohol abuse and how "a chronic alcoholic would respond to a stressful situation." According to Cory, information "relating to his alcoholism and medication abuse,[4] particularly expert evidence explaining to the jury [his] state of mind at the time that his wife was shot, would have been immensely valuable."

Perhaps an expert opinion may have helped the jury understand why Cory stayed in the house for days after purportedly discovering Vallerie's body. But Cory now contends such evidence should have been offered to help explain his mental state "at the time his wife was shot." Expert testimony for that purpose was inadmissible as it went to the specific intent element of first-degree murder. Indeed, defense counsel testified that she refrained from hiring a toxicology expert because Cory decided not to pursue diminished capacity and intoxication defenses, which would have negated the specific intent element.

Counsel continued:

And then as far as what we did want to introduce evidence of his intoxication for, we were just using it as an explanation of why he wouldn't have called the police right away ultimately. And, frankly, he was so obviously an alcoholic, and every single person that we

---

[4] Cory contends his counsel knew he abused Tramadol, a pain killer, and that "Tramadol interacted with his alcohol."

talked to was saying he was an alcoholic, and alcoholism is such just—frankly, something that's so common and so many people have so much understanding about, we didn't think we needed an expert to testify to that.

Counsel also noted that hiring an expert would require providing notice to the State. And in her view, the State could then predict what the defense strategy was for trial. Based on counsel's reasoning, we believe the failure to obtain a toxicology expert was a reasonable tactical decision. *See Heaton v. State*, 420 N.W.2d 429, 432 (Iowa 1988) (holding question "whether or not to call an expert witness is a matter of trial strategy"). Thus, counsel breached no duty.

### 4. Opinion Testimony

Cory next contends he was convicted on improper opinion testimony from Vallerie's niece and DCI Agent Don Schnitker. First, he complains that over trial counsel's objection, the niece testified that Vallerie was reluctant to allow visitors into the house, insinuating Cory was dangerous. Second, Cory points to Schnitker's testimony, likewise admitted over counsel's objection, that Cory listed all of his other firearms, but "intentional[ly]" failed to mention a Ruger Mini-14 .223 rifle—determined to be the murder weapon.

Cory acknowledges trial counsel lodged proper objections, but argues appellate counsel was ineffective in not challenging the court's admission of that evidence. He urges "there is a reasonable probability that, but for this inadmissible evidence, Cory could have received a different result." We disagree.

Even if we accepted that the challenged statements were improper opinions, appellate counsel does not have a duty to raise every conceivable complaint. Cory's experienced state appellate defender testified that choosing

more viable issues to brief is a matter of strategy. Indeed, "[s]electing assignments to assert as grounds for reversal is a professional judgment call we are reluctant to second-guess." *Osborn v. State*, 573 N.W.2d 917, 922 (Iowa 1998). "Highly competent appellate lawyers generally assign only the strongest points and rely on them for reversal. That is what counsel sought to do here." *Cuevas v. State*, 415 N.W.2d 630, 633 (Iowa 1987). Cory's appellate counsel performed competently.

Cory also falls short on the prejudice prong. As we noted on direct appeal: "[T]he State presented overwhelming evidence that Cory, a man with an explosive temper and an unstable marriage, used his own rifle to shoot his wife eighteen times." *Cory*, 2015 WL 7567527, at *9. We see no reasonable probability of a different outcome had counsel raised those evidentiary issues on direct appeal.

### 5. Prosecutorial Misconduct

Finally, Cory claims trial counsel should have objected to statements in the prosecutor's closing argument. He maintains the prosecutor committed misconduct when he commented that the State's timeline showing the victim died on Friday tracked "Mr. Cory's failure to truly explain where he was on Wednesday and Thursday, his refusal to answer." In Cory's view, the phrases "failure to truly explain" and "refusal to answer" were objectionable remarks on his decision not to testify. *See Griffin v. California*, 380 U.S. 609, 612–15 (1965) (holding prosecutor's comment on defendant's failure to testify violates self-incrimination clause).

But Cory takes those phrases out of context. As the State explains, "the prosecutor was actually referencing Cory's police interview," and *not* his refusal to testify at trial. During a lengthy closing argument, the prosecutor reminded the

jury: "Agent Schnitker pressed Mr. Cory hard for a timeline in those days, and remember Mr. Cory's answers started to get vague on Wednesday and Thursday. He made an occasional reference to being with [the victim], but then he didn't say really anything specific." The prosecutor's rebuttal returned to Cory's inability to account for his actions in the two days before the victim's death.

Even if the comments had been error or misconduct, trial counsel provided a reasonable explanation for not objecting. She recalled: "The thing about a really terrible closing argument is that it's more likely to put the jurors to sleep. When I was watching the jurors during closing arguments . . . they weren't interested too much in what he was saying." Counsel continued: "Now, as soon as I start objecting that's going to perk up their ears and they're going to be paying a lot more attention. Tactically I just thought let's not highlight the objectionable statements that otherwise, frankly, they're probably sleeping through at this point in time." We decline to second-guess that tactical decision. *See Williams v. State*, No. 19-1848, 2020 WL 7021779, at *5 (Iowa Ct. App. Nov. 30, 2020).

Having no basis for reversal on ineffective-assistance grounds, we affirm the denial of Cory's second PCR application.

**AFFIRMED.**