# IN THE COURT OF APPEALS OF IOWA

No. 24-0588
Filed June 18, 2025

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**AMARRION DEMEIR ISOM,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Marshall County, Amy M. Moore,

Judge.


        A defendant appeals his conviction for murder in the first degree.

**AFFIRMED.**


        Tiffany Kragnes, Des Moines, for appellant.

        Brenna Bird, Attorney General, and Joseph D. Ferrentino, Assistant

Attorney General, for appellee.


        Considered without oral argument by Schumacher, P.J., Sandy, J., and

Bower, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206

(2025).

**SCHUMACHER, Presiding Judge.**

Amarrion Isom appeals his conviction for murder in the first degree. He challenges the sufficiency of the evidence to support his conviction, arguing the State failed to prove he acted with premeditation.[1] Isom also appeals the use of a jury instruction permitting the jury to infer malice from Isom's use of a dangerous weapon. Upon review, we affirm.

I.      **Background Facts & Prior Proceedings**

From the evidence presented at trial, a reasonable jury could find the following facts.

Isaiah Forest and his girlfriend owed Isom $150. Isom messaged Forest through a phone messaging application called Telegram, which Isom knew was accessible by both Forest and Forest's girlfriend. The following Telegram conversation occurred on the morning of March 17, 2023, and began with a discussion of a "bag" that Forest's girlfriend had offered as repayment. Isom rejected the idea that the bag satisfied the debt.

> Isom:   Ain't shit in that bag oml but Anyways I cut that bag up n shit cuz y'all kept saying it was sun in da bag if it was I would have took what was mine n gave it back wasn't shit n there omm but n[----] y'all wasn't gone pay me back anyways u turning yo self n or staying n Ames
>
> Forest:[2]  Wow

---

[1] Language in Isom's appellate brief raises the question of whether he intended to challenge the district court's denial of his motion for directed verdict and his renewed motion for directed verdict. But the substance of Isom's briefing on this point only argues the sufficiency of the evidence. The State pointed these flaws out in its responsive brief, and Isom specifically waived filing a reply brief. To the extent that Isom intended to challenge the district court's rulings on the motions for directed verdict, he has forfeited those challenges. *See State v. Jackson*, 4 N.W.3d 298, 311 (Iowa 2024) (reciting rules of waiver and forfeiture).

[2] At trial, Forest's girlfriend denied that she participated in the Telegram conversation with Isom. She testified that although she had access to Forest's

> Isom: N lk this not Isaiah shorty y is u texting me I heard y'all broke up
> Isom: But it's what ever pay me or don't just know I'm still on that
> Forest: Ight bet and this is Isaiah karma

Isom then called Forest, but the call was declined. The Telegram conversation continued:

> Forest: Nothing to talk about
> Isom: Hmmm u don't say Ight keep ducking yo taco then simple
> Forest: Just be on yo toes
> Isom: Fasho keep it gangsta then [Shorty]

At 2:14 p.m., Isom messaged, "Nice to know u in town c u soon."

At 3:31 p.m., Isom and his roommate left their apartment in Isom's car. Isom had a loaded, break-action shotgun hidden inside the right-side leg of his pants. Isom, who had offered to drive his roommate to work for his 4:00 p.m. shift, gave his roommate a handgun and told him they needed "to make a stop real quick." The roommate was wearing his work shirt, which showed his employer's recognizable work logo. Isom told the roommate to turn his shirt inside out because "he didn't want people knowing where he worked."

Isom drove them to a nearby "trap house" in Marshalltown, where Forest was hanging out for the day. Isom parked behind the house and said, "Come on." Not knowing why they were there, Isom's roommate hid the handgun in the car before getting out. Isom walked with the shotgun tucked inside his pant leg again as the two approached the front of the house.

---

Telegram account, she never engaged in any of Forest's conversations. Because a jury could reasonably credit Forest's girlfriend's testimony as truth and determine Forest was the individual responding to Isom's messages, we present the conversation here as between Isom and Forest.

Isom knocked on the front door. Forest answered. Isom pulled out the loaded shotgun, pointed the barrel at Forest, and said, "Yeah, n[----]." Forest tried to reach for the shotgun, but Isom moved it before Forest could touch it. Isom asked, "What, do you think I won't do it?" Then Isom shot Forest in the upper chest, killing him.

Without checking on Forest or trying to save his life, Isom and his roommate immediately ran back to Isom's car. Back at the apartment at 3:42 p.m., Isom took the shotgun inside and washed his hands with bleach. Isom's roommate returned the handgun to Isom and expressed doubt over whether he should still go to work, considering what he had just witnessed. But Isom insisted, saying they needed an alibi.

The State charged Isom by trial information with murder in the first degree in violation of Iowa Code section 707.2(1)(a) (2023). A jury convicted Isom as charged. Isom appeals.

## II.    Standard of Review

Sufficiency of the evidence claims are reviewed for correction of errors at law. *State v. Benson*, 919 N.W.2d 237, 241 (Iowa 2018). We view the evidence in the light most favorable to the State and will uphold a verdict supported by substantial evidence. *Id.* Evidence is "substantial if it would convince a rational fact finder the defendant is guilty beyond a reasonable doubt." *State v. Meyers*, 799 N.W.2d 132, 138 (Iowa 2011). "We draw all legitimate inferences in support of the verdict. However, '[e]vidence which merely raises suspicion, speculation, or conjecture is insufficient.' The evidence must at least raise a fair inference of guilt

as to each essential element of the crime." *State v. Crawford*, 974 N.W.2d 510, 516–17 (Iowa 2022) (citations omitted).

We review challenges to the provided jury instructions for legal error. *State v. Mathias*, 936 N.W.2d 222, 226 (Iowa 2019). Our analysis asks whether the challenged instruction "accurately states the law and whether substantial evidence supports it." *Id.* (quoting *State v. Albright*, 925 N.W.2d 144, 157 (Iowa 2019)). We will only reverse if an instruction was erroneous and the error resulted in prejudice. *Id.* "Prejudice results when jury instructions mislead the jury or materially misstate the law." *Id.* (quoting *Benson*, 919 N.W.2d at 241–42).

## III. Sufficiency of the Evidence

The jury was instructed that a conviction for murder in the first degree, required the State to prove: (1) "On or about March 17, 2023, Amarrion Isom shot Isaiah Forest"; (2) "Mr. Forest died as a result of being shot"; (3) "Mr. Isom acted with malice aforethought"; and (4) "Mr. Isom acted willfully, deliberately, premeditatedly and with a specific intent to kill Mr. Forest."

Isom only challenges the sufficiency of the evidence presented on the element of premeditation. The jury was instructed that to "'premeditate' is to think or ponder upon a matter before acting" and that "premeditation need not exist for any particular length of time before the act."

The State called Isom's roommate as a witness at trial, who provided an eyewitness account of the shooting. A surveillance video from outside of Isom's apartment and outside the house where Forest was hanging out corroborated portions of the roommate's testimony. In essence, the jury heard that when Forest answered the door Isom pulled out the loaded shotgun, aimed it point-blank at

Forest, taunted Forest, then shot and killed him. This accounting is supported by the other evidence presented that showed Isom had a motive: Isom was frustrated with Forest's response to his outstanding debt.

Even if the jury believed Isom only formed the intent to kill Isom moments before the shooting, that is enough to find Isom acted with premeditation. *See State v. Howard*, 14 N.W.3d 763, 769 (Iowa Ct. App. 2024) ("[P]remeditation . . . need exist 'only but an instant before the fatal blow.'" (quoting *State v. Wilson*, 11 N.W.2d 737, 754 (Iowa 1943))). While Isom presented a different interpretation of the evidence, claiming the shooting was an accident caused by surprise, the jury was under no obligation to accept Isom's version of events. *See State v. Keopasaeuth*, 645 N.W.2d 637, 640 (Iowa 2002) (recognizing the jury is free to credit certain evidence and reject conflicting evidence). Viewed in the light most favorable to the State, substantial evidence was presented for a reasonable jury to find beyond a reasonable doubt that Isom acted with premeditation.

## IV.    Malice Aforethought Jury Instruction

Isom contests the use of a jury instruction which stated, "Malice aforethought may be inferred from Mr. Isom's use of a dangerous weapon." Isom concedes that this is a "stock" instruction. It correctly states the law, generally. *See State v. Green*, 896 N.W.2d 770, 780 (Iowa 2017) ("[T]he jury may infer the defendant acted with malice aforethought by using a dangerous weapon."). But Isom argues it misstates the law as the law should have been applied here. The foundation for this argument is Isom's insistence that he did not intentionally use the shotgun; the gunshot was an accidental and unintentional discharge.

Although "the jury may infer the defendant acted with malice aforethought by using a dangerous weapon, the natural consequence of which is physical harm or death," there may be circumstances where the inference would be inappropriate. *Id.* One such circumstance is when "the trier of fact accepts the defendant's assertion" that the deadly weapon "was not used intentionally, such as when a firearm is accidentally discharged." *Id.* at 780–81. But there is no error if the use of the jury instruction was supported by substantial evidence. *See id.* at 781.

Isom maintains that he did not expect Forest to be at the house on March 17 and that Forest's death resulted because of surprise. He denies he knocked on the door; states he was carrying the loaded shotgun with his finger on the trigger; claims he was met face-to-face with Forest when he went to open the door; alleges Forest grabbed the shotgun; and says that when he pulled back in surprise, the gun went off, unintentionally hitting Forest with a shotgun blast through the upper chest and killing him. And Isom claims he was not threatening Forest in the messages he sent the morning of the shooting, as the State asserted, but rather that he was expressing his frustration with Forest's attempts to avoid talking to him about the debt. But Isom's claims ignore the eyewitness testimony that conflicts with his story and which accords with the State's theory of the evidence.

Isom knew that Forest, who had been staying temporarily in Ames after absconding from a halfway house, was back in Marshalltown on March 17. Another witness, a friend of Isom's, testified that he had been at the house alone with Forest earlier that day and that he left the house not long after 2:00 p.m. At 2:14 p.m., Isom learned Forest was unexpectedly in Marshalltown and messaged,

"Nice to know u in town c u soon." Roughly an hour and fifteen minutes later, Isom drove directly to Forest's location, taking with him a loaded shotgun and his roommate, to whom Isom had handed a backup handgun.

The jury could infer that Isom intentionally brought the shotgun to the place where he knew he would encounter Forest. The jury could also infer that he did so with the intent to cause Forest physical harm or death. Here, there was substantial evidence that the gunshot was not accidental and that Isom acted with malice aforethought—that he "intentionally [did] a wrongful act to the injury of another out of actual hatred, or with an evil or unlawful purpose." The jury instruction was therefore supported by substantial evidence and was a correct statement of the law. We find no legal error.[3]

## V. Conclusion

As substantial evidence supported the jury's finding that Isom acted with premeditation and that the shooting was not an accidental discharge, we find no error in the use of the challenged jury instruction and uphold Isom's conviction.

**AFFIRMED.**

---

[3] Because we find no legal error, we need not address Isom's prejudice claim that the instruction was misleading to the jury. Isom also failed to present any legal authority to support his prejudice argument, which argued the jury instruction misled the jury because it did not state the jury may, but is not required to, make an inference from the use of the shotgun, as included in the jury instruction immediately preceding the disputed instruction. So even if we were to find error, Isom's argument may be waived. *See* Iowa R. App. P. 6.903(2)(a)(8)(3).