# IN THE COURT OF APPEALS OF IOWA

No. 20-1180
Filed April 13, 2022

**STEPHEN JONAS,**
 Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
 Respondent-Appellee.
_____

Appeal from the Iowa District Court for Polk County, Scott J. Beattie, Judge.

Stephen Jonas appeals the denial of his application for postconviction relief.
**AFFIRMED.**

Andy Dunn and Jessica Donels of Parrish Kuidenier Dunn Gentry Brown Bergmann & Messamer L.L.P., for appellant.

Thomas J. Miller, Attorney General, and Linda J. Hines, Assistant Attorney General, for appellee State.

Considered by Bower, C.J., and Vaitheswaran and Schumacher, JJ.

**VAITHESWARAN, Judge.**

A jury found Stephen Jonas guilty of second-degree murder in connection with the stabbing of a man in Clive, Iowa. The supreme court affirmed his judgment. *See State v. Jonas*, 904 N.W.2d 566, 568 (Iowa 2017).

Jonas filed a postconviction-relief application raising several claims of ineffective assistance of trial and appellate counsel. The postconviction court denied the application following an evidentiary hearing.

On appeal, Jonas asks us to "recognize an independent standard for ineffective assistance of counsel." He contends his trial attorneys were ineffective in failing to (A) request additional peremptory strikes following "the denial of a motion to strike jurors for cause"; (B) "file a motion to suppress his statements" to police; (C) "make proper objections to" an agent's testimony; and (D) object to hearsay, vouching, and handgun evidence. He also contends his attorney on direct appeal was ineffective in failing to challenge a trial court ruling on a juror's conduct. Finally, he contends "cumulative error undermined the fundamental fairness of [his] trial."

## I.      *Ineffective-Assistance-of-Counsel Standard*

To prevail on an ineffective-assistance-of-counsel claim, a postconviction-relief applicant must establish deficient performance and prejudice. *Strickland v. Washington*, 466 U.S. 668, 690, 694 (1984). On the deficient-performance prong, "the presumption is the attorney competently performed his or her duties." *State v. Ross*, 845 N.W.2d 692, 698 (Iowa 2014). "The defendant 'rebuts this presumption by showing a preponderance of the evidence demonstrates counsel failed to perform an essential duty.'" *Id.* (citation omitted). On the prejudice prong,

"[t]he defendant must show . . . a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

Our supreme court has adhered to the *Strickland* standard. *See Doss v. State*, 961 N.W.2d 701, 709 (Iowa 2021); *State v. Zacarias*, 958 N.W.2d 573, 588 (Iowa 2021) (citing the defendant's request "to depart from federal jurisprudence to reject the prejudice prong of the *Strickland* test and instead adopt a harmless error standard" and preserving the ineffective-assistance-of-counsel claim without addressing the request). So has the court of appeals. *See Cory v. State*, No. 20-1112, 2021 WL 3661176, at *1 (Iowa Ct. App. Aug. 18, 2021) ("Because our supreme court has not yet addressed whether Iowa should adopt its own standard for deciding ineffective-assistance claims under the state constitution, we decline [the applicant's] invitation" to adopt a new harmless-error standard); *Hicks v. State*, No. 18-1625, 2019 WL 4297874, at *2 (Iowa Ct. App. Sept. 11, 2019) (citation omitted) (declining to address the independent standard "claim because this court is not at liberty to overrule controlling supreme court precedent"); *Beloved v. State*, No. 17-1908, 2019 WL 1300224, at *1 (Iowa Ct. App. Mar. 20, 2019) (footnote and citation omitted) (noting "it is . . . not for this court to diverge from the supreme court precedent, and we will apply *Strickland* prejudice to [the applicant's] claims"). We see no reason to deviate from this case law and from the *Strickland* standard.

## II. Ineffective Assistance of Trial Counsel

### A. Failure to Seek Additional Peremptory Strikes

On direct appeal, Jonas argued that the trial court abused its discretion in failing to strike a juror for cause. *Jonas*, 904 N.W.2d at 568. The supreme court

agreed with Jonas but found no prejudice. *Id.* at 575, 584. The court reasoned, "Jonas did not identify an additional juror who the defense sought to remove from the jury through the exercise of an additional peremptory challenge." *Id.* at 584.

In this appeal, Jonas contends his trial attorneys' "failure to request additional peremptory strikes for" either of two identified jurors "was ineffective assistance of counsel."[1] He asserts one of the jurors had a friend who knew family of the person who was killed and the other expressed bias towards gay people, albeit not to the same extent as the juror who was the subject of his direct appeal. We elect to focus on the prejudice prong of the *Strickland* standard, reviewing the record de novo.

The juror with a friend of the stabbed man was questioned during the criminal trial and stated, "[M]y friend told me that her friend was the father of the victim. But other than that, that's the only discussion I ever had about it." The juror asserted that no opinion had been formed in the case and, if selected, a decision would be based on the evidence presented. One of Jonas' trial attorneys was asked why this juror was not stricken. He testified by deposition that he was not "concerned about that person being impartial."

The second juror also was questioned during the criminal trial and stated, "I don't judge people by their race, gender." When asked about the belief that homosexuality was a sin, the juror responded, "I also believe that everyone is a sinner." One of Jonas' attorneys conceded he would not want that person to sit on his final jury. At the same time, he did not recall anyone he would have stricken if

---

[1] Jonas exercised all his peremptory strikes.

he had one more strike. He stated, "I thought we picked a good jury." Jonas' second trial attorney similarly testified, "I don't know if there was another juror really that we would have struck that we couldn't because . . . we had to use it on" the juror who was the subject of the direct appeal. While he conceded they might not have known to "ask for another peremptory strike," he agreed he and co-counsel were happy with the jury they picked.

Based on this record, we conclude there is no reasonable probability of a different result had Jonas' attorneys asked for an additional peremptory strike for one of the two identified jurors.

## B. Failure to File Motion to Suppress

Jonas twice went to the police station and answered questions posed by law enforcement officers. Jonas contends his trial attorneys were ineffective in "fail[ing] to file a motion to suppress" the statements he made during the second interview. He specifically asserts (1) "the State interrogated [him] while in custody without *Miranda* warnings or counsel present" and (2) there was "a commitment by the State to prosecute" him at the time of the interview, triggering his constitutional right to counsel.

### 1. Custodial Interrogation

*Miranda v. Arizona*, 384 U.S. 436, 471, 478–79 (1966) holds: "When an individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning," the United States Constitution's Fifth Amendment "privilege against self-incrimination is jeopardized," and the person

must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires.

"For purposes of the Fifth Amendment, a suspect is in custody 'as soon as a suspect's freedom of action is curtailed to a degree associated with formal arrest.'" *State v. Tyler*, 867 N.W.2d 136, 171 (Iowa 2015) (citation omitted). "[T]he only relevant inquiry is how a reasonable [person] in the suspect's position would have understood his [or her] situation." *State v. Turner*, 630 N.W.2d 601, 607 (Iowa 2001). The court considers four factors in making this determination: "(1) the language used to summon the individual; (2) the purpose, place, and manner of interrogation; (3) the extent to which the defendant is confronted with evidence of his or her guilt; and (4) whether the defendant is free to leave the place of questioning." *State v. Countryman*, 572 N.W.2d 553, 558 (Iowa 1997).

Jonas concedes he went to the police station voluntarily. He focuses on the remaining factors, noting that he "was placed far from the closed door; a table and two armed agents prevented his opportunity to exit the room," and "[t]he manner of the interrogation was coercive, accusatory, and designed to elicit incriminating statements." He points to "multiple accusations of his guilt during the second interview" and asserts that it is "objectively unreasonable" to believe "he would have been allowed to leave."

The record includes a video recording and transcription of the second interview. Jonas is correct that he was sandwiched in a corner of a small room and two agents with the department of criminal investigation were seated across from him. *See State v. Effler*, 769 N.W.2d 860, 884 (Iowa 2009) ("At the police

station, a detective interviewed [the defendant] in a small interview room."). He was confronted with evidence of his guilt, including a video of his vehicle. *See State v. Schlitter*, 881 N.W.2d 380, 398 (Iowa 2016) ("The approach taken by the investigating officers was consistent with the type of circumstances that can make suspects feel a coercive atmosphere of custody."); *State v. Pearson*, 804 N.W.2d 260, 271 (Iowa 2011) (noting a social worker "immediately confronted [the defendant] with evidence of his guilt" and that "factor support[ed] a finding of a custodial interrogation"). One of the agents conceded he would have told him not to leave had he tried to do so. *See State v. Stark*, No. 20-1503, 2021 WL 4592256, at *5 (Iowa Ct. App. Oct. 6, 2021) (noting the officer "acknowledged at the suppression hearing that [the defendant] was indeed not free to leave"). At the same time, Jonas confirmed he was there voluntarily. When confronted with evidence of his prior state of mind, he responded "that's why I came here." During most of the interview, the exchange was conversational. *See Schlitter*, 881 N.W.2d at 398 (noting circumstances indicating defendant "did not believe the interview had evolved into a custodial setting"). We conclude the interview was not a custodial interrogation. Accordingly, Jonas' trial attorneys did not breach an essential duty in failing to file a motion to suppress the interview.

Even if the second interview was a custodial interrogation, Jonas could not establish *Strickland* prejudice. Jonas filed a notice of his intent to rely on the defense of self-defense. The statements he made to the agents advanced that defense. At trial, he confirmed he spoke to them voluntarily because he "couldn't take the stress anymore." He said that, after he told the agents what happened, he felt "[r]elieved." He reiterated that he was attacked with a hammer by the man

who was killed and he responded by stabbing him with a knife. Because his trial testimony largely duplicated the second interview statements admitted at trial, there is no reasonable probability of a different outcome had the interview statements not been admitted. *See State v. Madsen*, 813 N.W.2d 714, 727–28 (Iowa 2012) (focusing on the effect of statements that were admitted following a promise of leniency during a police interview).

### 2. Right to Counsel

Jonas also contends his trial attorneys should have moved to suppress his statements during the second interview on the ground that the prosecution had "solidified its position" against him, triggering his right to counsel.

The supreme court addressed the identical issue in *State v. Green*, 896 N.W.2d 770, 775–76 (Iowa 2017). There, as here, the defendant argued constitutional rights to assistance of counsel "attached to the prearrest interview because enough prosecutorial forces of the state had been committed against him to make him 'the accused' and to make the interview the functional equivalent of a criminal prosecution." *Green*, 896 N.W.2d at 775–76 (citation omitted). The court concluded the "[t]he interview occurred before" the initiation of certain designated "formal events" and, accordingly, the defendant had "no right to counsel" under the Sixth Amendment to the United States Constitution. *Id.* at 776. Under the Iowa Constitution, the court acknowledged that "the right to counsel [could] exist even without the filing of formal or informal charges." *Id.* at 777. The court found the defendant's voluntary appearance at the police station, his ability to leave or stop the interview at any time, the absence of an arrest warrant, the absence of charges, and the prosecutor's participation "as an investigator" rather than a prosecutor

supported a conclusion that the right to counsel had not attached. *Id.* at 778–79; *see also State v. Sewell*, 960 N.W.2d 640, 649–50 (Iowa 2021) (citing *Green* for the proposition that no right to counsel attached to a suspected drunk driver); *Ruiz v. State*, 912 N.W.2d 435, 441 (Iowa 2018) (citing *Green* for the proposition that the right to counsel did not attach where an individual "was just trying to get a driver's license"); *Fernandez v. State*, No. 17-0132, 2018 WL 3471591, at *6 (Iowa Ct. App. July 18, 2018) (concluding the right to counsel had not yet attached at a meeting with the department of transportation, where the citation was not issued "until the end of the meeting," even though "some investigation had taken place" and a "voluntary statement" was obtained from the defendant).

As in *Green*, Jonas came to the police station voluntarily. Although the prosecutor had prepared applications for search warrants, that conduct was investigative rather than prosecutorial. There was no indication prosecutors participated in the interview. And, as conceded, no formal documents were filed against Jonas. Like the postconviction court, we conclude *Green* is controlling. Because the right to counsel under the Iowa Constitution had yet to attach, Jonas' trial attorneys had no duty to file a suppression motion on this basis.

### C.      Failure to Object to Agent's Credibility Assessment

At trial, one of the agents who questioned Jonas at the police station impugned Jonas' credibility. Specifically, he was asked whether people who claimed self-defense commonly "aren't honest up front." He responded, "They generally tell us right away." He continued, "My experience is they are forthright and give us the circumstances of the situation." He noted that Jonas did not do that. The prosecutor mentioned this testimony during his closing argument.

Jonas contends his trial attorneys were ineffective in "fail[ing] to make proper objections to the agent's testimony and the comment during closing argument. In his view, the agent's testimony amounted to an improper comment about the truthfulness of another witness.

"It is well-settled law in Iowa that a bright-line rule prohibits the questioning of a witness on whether another witness is telling the truth." *Bowman v. State*, 710 N.W.2d 200, 204 (Iowa 2006). Assuming without deciding that this rule was violated and Jonas' attorney had a duty to object, the attorney effectively addressed the issue on cross-examination. He elicited an admission from the agent that it was not uncommon for people to initially deny their involvement and it would not be uncommon for someone to come in several times before the person admits their involvement. Counsel also elicited admissions that Jonas apologized for not coming clean during the first interview.

Jonas' attorney also questioned Jonas about his unwillingness to disclose his involvement from the outset. Jonas said he was not initially forthright because he "was in an alternate thought pattern . . . almost like posttraumatic stress." In light of counsel's efforts to ameliorate the agent's negative credibility testimony about Jonas, we conclude Jonas could not establish *Strickland* prejudice.

### D.  Failure to Object to Hearsay, Vouching, Firearm Evidence

Jonas contends, "[i]n addition to the above-briefed claims, trial counsel erred in allowing inadmissible hearsay statements, vouching for [the stabbed person's] credibility, and irrelevant evidence about a firearm into the trial." He raises these arguments in the context of his assertion that cumulative error infected the proceeding.

The hearsay issue is based on the testimony of two witnesses. Both recounted the deceased's statements about Jonas' conduct. Jonas' attorneys did not object to this testimony, and the defense attorney who cross-examined these witnesses did not recall or did not know of a strategic reason for not objecting. But on our de novo review of the witnesses' testimony, we agree with the postconviction court that the deceased's statements advanced Jonas' self-defense theory. Specifically, the statements indicated the deceased deemed Jonas' conduct inappropriate, affording grounds for him to instigate violence, as Jonas claimed. We conclude counsel did not breach an essential duty in failing to object to the statements.

Jonas' attorneys also did not object to the testimony of a witness who vouched for the credibility of the deceased man. The testimony arose as follows. Jonas' attorney asked the witness to repeat what the man said to her. According to the witness, the deceased told her he wanted to "beat [Jonas'] ass." Counsel confirmed that the witness relied upon what the deceased told her. Then, the prosecutor asked, "Would he usually be truthful with you?" The witness responded, "Yes."

As noted, one witness is not allowed to testify to the credibility of another witness. *See Bowman*, 710 N.W.2d at 204. In this case, Jonas' attorneys elicited the vouching attorney to bolster their claim that the deceased was the aggressor. We conclude counsel did not breach an essential duty in declining to object to this testimony.

Finally, Jonas asserts "the jury was allowed to hear that [he] had a handgun in his house, and the gun was entered into evidence as an exhibit, even though it

had no relation to the alleged crime." Citing the deposition testimony of one of the attorneys, the postconviction court concluded counsels' "failure to object was based upon sound strategy and procedure." On our de novo review, we agree. That attorney testified both "thought it went against the premeditation of murder first to show that [Jonas] owned a gun." He confirmed it was trial strategy to allow the gun evidence to be admitted. We conclude counsel did not breach an essential duty in declining to object to the evidence.

### III.    *Ineffective Assistance of Appellate Counsel*

During trial, the court attendant informed the court that the juror whose friend knew a family member of the deceased had noticed the juror and "wanted to come up to her, saw the badge, then they both stopped." The district court questioned the juror, who acknowledged her friend "looked at" her when they broke for lunch before "walk[ing] away." Following the questioning, one of Jonas' attorneys pointed out that "two alternate[ ]" jurors were named and, in an "abundance of caution," it might be worth choosing one of them. The trial court concluded "the fact that a juror bumped into someone that she knows who has been watching the trial is not grounds for removal of this juror."

Jonas contends his attorney on direct appeal was ineffective in "fail[ing] to raise the issue that the trial court abused its discretion" in denying the trial attorney's request. On our de novo review, we disagree.

Jonas' attorney raised the juror's conduct at trial, requested the seating of an alternate juror, and obtained a ruling on the issue. Appellate counsel testified by deposition that he did not remember why he failed to raise a challenge to the court's ruling on direct appeal. What we know is that he raised a strong issue that

partially persuaded the court. Counsel reasonably could have decided to pursue the strongest issue at the expense of less meritorious claims. *See State v. Webster*, 865 N.W.2d 223, 238–39 (Iowa 2015) ("The mere fact a juror has knowledge of parties or witnesses does not indicate actual bias or require juror disqualification."). On our de novo review, we conclude the choice of issues on appeal was a reasonable strategic decision. Appellate counsel did not breach an essential duty in failing to challenge the district court's denial of the motion to remove this juror.

## IV. Cumulative Error

Jonas argues the cumulative effect of the errors prejudiced him. He exhorts us "not [to] consider the . . . errors in isolation," but to "consider how they interacted with each other."

In *State v. Clay*, 824 N.W.2d 488, 501–02 (Iowa 2012), the supreme court held,

> If the defendant raises one or more claims of ineffective assistance of counsel, and the court analyzes the prejudice prong of *Strickland* without considering trial counsel's failure to perform an essential duty, the court can only dismiss the postconviction claim if the alleged errors, cumulatively, do not amount to *Strickland* prejudice.[2]

Applying this standard, the only two claims that we resolved on the *Strickland* prejudice prong alone were the peremptory strike issue and the agent's

---

[2] Two members of the court called this statement into question. *See Clay*, 824 N.W.2d at 503–05 (Mansfield, J. concurring specially, joined by Waterman, J.). The special concurrence expressed concern with "whether the prejudicial effect of separate errors by counsel can be accumulated for ineffective-assistance purposes." *Id.* at 503.

impugning of Jonas' credibility.  Suffice it to say that, even if we were to aggregate those two errors, there is no reasonable probability of a different outcome.

We affirm the district court's denial of the postconviction-relief application.

**AFFIRMED.**